## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**SHERRY MCCLANAHAN,**

                    Plaintiff,

**vs.**                        **CASE NO.**_____

**GLOBAL LENDING SERVICES, LLC
(a foreign limited liability company) and EXPERIAN
INFORMATION SOLUTIONS, INC.
(an Ohio corporation), and EQUIFAX
INFORMATION SERVICES, LLC
(a Georgia company), and TRANS UNION, LCC
(a Delaware company),**

                    Defendants.

_____/

## COMPLAINT
## DEMAND FOR A JURY TRIAL

## INTRODUCTION

1.    Defendant, Global Lending Services, LLC knowingly continues to attempt to collect an illegitimate debt from Plaintiff and has spread false information affecting Plaintiff's reputation in violation of Plaintiff's civil rights under the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("the FCRA") and the Florida Consumer Collection Practices Act, Fla. Stat. § 559.55 *et seq.* ("FCCPA").

2.    Despite receiving evidence that the negative information being reported was not accurate from Plaintiff, Defendants, Experian Information Solutions, Inc., Equifax Information Services LLC, and Trans Union, LLC refuse to modify the

information in Plaintiff's credit files and continues to prepare consumer reports concerning Plaintiff that contain the inaccurate information in violation of the FCRA.

3.      Prior to retaining counsel, Plaintiff attempted in good faith to resolve this matter directly with Defendants to no avail.

## JURISDICTION AND VENUE

4.      This Court has federal question jurisdiction over Plaintiff's FCRA claims pursuant 28 U.S.C. § 1331, and 15 U.S.C. § 1681 *et seq.* This Court has supplemental jurisdiction over Plaintiff's FCCPA claims pursuant to 28 U.S.C. § 1367.

5.      Defendants are subject to the jurisdiction of this Court as Defendants each regularly transact business in this District and the events described herein occurred in this District.

6.      Venue in this District is proper pursuant to 28 U.S.C. § 1391(b) as a substantial part of the events or omissions giving rise to the claim occurred within this District.

## PARTIES

7.      Plaintiff, Sherry McClanahan, formerly Sherry Meehan is a natural person and a citizen of the State of Florida, residing in the Middle District of Florida.

8.      Plaintiff is a consumer as that term is defined by the FCRA, 15 U.S.C. § 1681a(c) and the FCCPA, Fla. Stat. § 559.55(8).

9.     Defendant, Global Lending Services, LLC ("Global Lending") is a foreign limited liability company existing under the laws of the State of Delaware with its principal place of business located at 1200 Brookfield Blvd, Suite 300, Greenville, SC 29607.

10.     Global Lending is a "person" as that term is defined by Fla. Stat. § 1.01(3).

11.     The FCCPA applies to any "person" collecting or attempting to collect a consumer debt. *E.g., Gann v. BAC Home Loans Servicing LP*, 145 So. 3d 906 (Fla. 2d DCA 2014); *Schauer v. General Motors Acceptance Corp.*, 819 So. 2d 809, 811-12 (Fla. 4th DCA 2002).

12.     Global Lending is a "person" as defined by the FCRA, 15 U.S.C. § 1681a(b).

13.     Global Lending is a "furnisher of information" as contemplated by the FCRA, 15 U.S.C. § 1681s-2(a) & (b), that regularly and in the ordinary course of business furnishes information to one or more consumer reporting agencies about consumer transactions or experiences with any consumer.

14.     Defendant, Experian Information Solutions, Inc. ("Experian") is a foreign corporation organized under the laws of the State of Ohio with its principal place of business in Costa Mesa, California.

15.     Experian is registered to conduct business in the State of Florida where its registered agent is CT Corporation System, 1200 South Pine Island Rd., Plantation, FL 33324.

16.     Experian is a "consumer reporting agency" as defined by the FCRA, 15 U.S.C. § 1681a(f).

17.     Defendant, Equifax Information Services, LLC ("Equifax") is a foreign limited liability company organized under the laws of the State of Georgia with its principal place of business in Atlanta, Georgia.

18.     Equifax is registered to conduct business in the State of Florida where its registered agent is Corporation Service Company, 1201 Hays Street, Tallahassee, FL 32301.

19.     Equifax is a "consumer reporting agency" as defined by the FCRA, 15 U.S.C. § 1681a(f).

20.     Defendant, Trans Union, LLC ("Trans Union") is a foreign limited liability company organized under the laws of the State of Delaware with its principal place of business in Chicago, Illinois.

21.     Trans Union is registered to conduct business in the State of Florida where its registered agent is Corporation Service Company, 1201 Hays Street, Tallahassee, FL 32301.

22.     Trans Union is a "consumer reporting agency" as defined by the FCRA, 15 U.S.C. § 1681a(f).

23.     Experian, Equifax, and Trans Union may hereinafter be referred to collectively as "the CRAs".

## **GENERAL ALLEGATIONS**

### **The FCRA**

24.     The FCRA is a federal statute designed to protect consumers from the harmful effects of inaccurate information contained in their consumer credit reports. Thus, Congress enshrined the principles of "fair and accurate credit reporting" and the "need to ensure that consumer reporting agencies exercise their grave responsibilities with fairness" in the very first provision of the FCRA. *See* 15 U.S.C. § 1681a.

25.     To that end, the FCRA imposes the following twin duties on consumer reporting agencies ("CRAs"): (i) CRAs must assure *maximum possible accuracy* of information when preparing consumer reports, and set up reasonable procedures to maintain compliance with this standard, 15 U.S.C. § 1681e(b) (emphasis added); and (ii) CRAs must reinvestigate the facts and circumstances surrounding a consumer's dispute and timely correct any inaccuracies, 15 U.S.C. § 1681i(a).

26.     Under the FCRA, when a consumer like Plaintiff disputes information through the CRAs, those disputes are transmitted to the party furnishing the information to the agency. The FCRA demands that both the CRA and the furnisher then separately conduct reasonable investigations of the consumer's dispute and correct or delete information they learn to be inaccurate or cannot otherwise verify. *See* 15 U.S.C. § 1681i(a) (discussing the CRAs' duty to investigate and correct disputed information); 15 U.S.C. § 1681s-2(b) (discussing the CRAs' duty to investigate and correct disputed information).

27.     Under the FCRA, when a CRA conducts any reinvestigation with respect to disputed information in the file of any consumer, the CRA shall review and consider all relevant information submitted by the consumer. 15 U.S.C. § 1681i(a)(4). Put simply, it is not enough for the CRA to simply parrot the information it receives from the furnisher after a consumer disputes the information being reported.

28.     The Consumer Financial Protection Bureau (the "CFPB") has noted that despite having an obligation to maintain the accuracy of consumer data "experience indicates that [CRAs] lack incentives and under-invest in accuracy." CFPB, Supervisory Highlights Consumer Reporting Special Edition: Issue 14, Winter 2017, at p. 21 (Mar. 2017)  (available at https://files.consumerfinance.gov/f/documents/201703_cfpb_Supervisory-Highlights-Consumer-Reporting-Special-Edition.pdf).

29.     A person who willfully or negligently fails to comply with the FCRA is subject to civil liability. *See* 15 U.S.C.A. §§ 1681n-1681o.

### <u>The FCCPA</u>

30.     The FCCPA is a state consumer protection statute, modeled after the federal Fair Debt Collection Practices Act, a statute designed to prohibit unfair, deceptive, and abusive practices in the collection of consumer debts as well as to protect against the invasion of individual privacy. Fla. Stat. §§ 559.55, 559.77(5).

31.   The FCCPA applies to any creditor / person collecting consumer debts and prohibits those creditors / persons collecting consumer debts from engaging in certain conduct. Fla. Stat. § 559.72(5).

32.   Specifically, the FCCPA prohibits unlawful debt collection "communication" with consumer debtors, which is defined as "the conveying of information regarding a debt *directly or indirectly* to any person *through any medium*." Fla. Stat. § 559.55(2) (emphasis added).

33.   For example, the FCCPA prohibits a person from collecting consumer debt by communicating with the consumer in a manner that can be expected to harass or abuse the consumer debtor.

34.   The FCCPA also prohibits the disclosure of false information about debts to third parties. *See* Fla. Stat. § 559.72(5),

35.   The FCCPA imposes civil liability on those creditors / persons who engage in prohibited conduct in connection with the collection of consumer debts when they fail to comply with the statutes when collecting consumer debts. Fla. Stat. § 559.77.

<u>**Plaintiffs' Factual Allegations**</u>

**The Debt**

36.   On or about November 23, 2018, Plaintiff entered into a contract for an auto loan, hereinafter referred to as the ("Debt"), with Plaintiff, Sherry Meehan listed as the buyer and Jason Paul Meehan listed as the co-buyer.  A copy of the original loan agreement is attached hereto as Exhibit "A"

37.     Subsequently, Global Lending hired the law firm Cooling & Winter, LLC ("Cooling & Winter") to represent its interests regarding the Debt.

38.     On or about April 3, 2023, Global Lending filed a lawsuit in Hillsborough County, Case No. 23-CC-061842 against Plaintiff in an attempt to collect the alleged debt.

39.     On June 28, 2023, in open court, Plaintiff and Global Lending entered into a settlement agreement wherein Plaintiff would pay a lump sum of $5,000.00 as settlement in full of her portion of the debt.

40.     The Settlement Stipulation was signed by all parties and the Order Approving Stipulation was signed by the judge and entered into the court record at the hearing.  A copy of the Stipulation and Order is attached hereto as Exhibit "B".

41.     Plaintiff timely made the payment and by July 14, 2023 received a letter from Global Lending's attorneys, Cooling & Winter, confirming that the account was settled in full and had a zero balance.  A copy of the zero-balance letter is attached hereto as Exhibit "C".

42.     Pursuant to the zero-balance letter, Cooling & Winter informed Global Lending that Plaintiff's account was settled in full.  A copy of the zero-balance letter is attached hereto as Exhibit "C".

43.     In October 2023, Plaintiff became aware that Global Lending was furnishing inaccurate, negative information regarding the Debt to the CRAs.

44.     Specifically, despite Plaintiff paying the settlement in full, Global Lending was reporting the account as having a balance owed, being currently past due, and currently delinquent.

45.     Any balances, past due status, or delinquency reflected in the Global Lending tradelines regarding the Debt after the July 14, 2023 zero balance letter is hereinafter referred to as the ("Inaccurate Information.")

46.     Global Lending's conduct regarding the Debt complained of herein— including furnishing information regarding the Debt to the CRAs—qualifies as "communication" as defined by Fla. Stat. § 559.55(2).

47.     Specifically, at all material times herein, Global Lending communicated negative information concerning the Debt to the CRAs in an attempt to extract and collect payment from Plaintiff.

48.     Global Lending communicates, furnishes, reports, and publishes specific details of consumer's alleged outstanding or delinquent debt accounts to compel or coerce the debtor to either satisfy the alleged balance or suffer the consequences of delinquent accounts, such as higher interest rates on consumer loans or complete denial of credit.

### Plaintiff's Written Dispute to Global Lending and CRAs

49.     Plaintiff repeatedly notified Global Lending both directly and indirectly via disputes to CRAs that she did not owe the Debt.

50.     Plaintiff called Global Lending several times to dispute the Inaccurate Information.  On all calls, Global Lending informed Plaintiff that contrary to the

Stipulation, they would not update the Inaccurate Information until the co-buyer paid the remaining balance in full.

51.     After, Plaintiff disputed the Debt in writing, Global Lending reported the Debt to the CRAs on or about January 26, 2024 and did not report to the CRAs that Plaintiff disputed the Debt.

52.     On or about January 10, 2024, Plaintiff mailed detailed dispute letters to each of the CRAs and Global Lending. The detailed disputes included a copy of the signed stipulation, signed order and zero balance letter from Cooling & Winter.

53.     Plaintiff mailed her detailed dispute letter to Trans Union via USPS Priority Mail 9405 5036 9930 0649 7554 76. USPS confirmed delivery to Trans Union on January 13, 2024.

54.     Plaintiff mailed her detailed dispute letter to Experian via USPS Priority Mail 9405 5036 9930 0649 7555 06. USPS confirmed delivery to Experian on January 16, 2024.

55.     Plaintiff mailed her detailed dispute letter to Equifax via USPS Priority Mail 9405 5036 9930 0649 7554 90. USPS confirmed delivery to Equifax on January 15, 2024.

56.     Plaintiff mailed her detailed dispute letter to Global Lending via USPS Priority Mail 9405 5036 9930 0649 7554 69. USPS confirmed delivery to Global Lending on January 16, 2024.

57.     Upon information and belief, the CRAs promptly and properly gave notice to Global Lending of Plaintiff's disputes in accordance with the FCRA.

However, Global Lending failed to modify, delete or block the Inaccurate Information it reported on Plaintiff even after supposedly conducting an investigation and previously being informed by Cooling & Winter that the Debt was settled in full.

58.    Instead, Global Lending validated the balances and reported and continues to report inaccurate information as to Plaintiff to the CRAs.

59.    Global Lending also continues to attempt to collect the Debt from Plaintiff via dunning letters.

**Equifax's Response to Plaintiff's Dispute**

60.    As explained above, Equifax received Plaintiff's detailed dispute regarding the Inaccurate Information on January 15, 2024.

61.    The detailed dispute included a copy of the signed stipulation, signed order and zero balance letter from Cooling & Winter.

62.    Despite receiving Plaintiff's detailed dispute and evidence that she had paid off the account in full, by July 14, 2023, Equifax responded to the dispute (Confirmation # 4026539651) by stating the disputed information had been verified as accurate and the account would continue to be reported as having a balance owed and being currently past due and delinquent.

63.    Despite receiving Plaintiff's detailed dispute and evidence that she had paid off the account in full in July 2023, Equifax continued and continues to prepare consumer reports regarding Plaintiff that contain the Inaccurate Information and has communicated those prepared consumer reports to third parties.

64.     Continuing to report the account as having a balance is of significance. By continuing to report that account in that fashion, lenders believe the consumer is still liable for the balance and would consider the balance when determining Plaintiff's debt to income ratio, which is a factor used by creditors when deciding whether and how much to lend.

65.     As of the filing of this Complaint, no one from Equifax has attempted to contact Plaintiff to further investigate the dispute.

66.     Equifax failed to conduct a reasonable investigation.

67.     Equifax failed to review and consider all relevant information submitted by Plaintiff.

68.     Equifax failed to conduct an independent investigation, and instead simply deferred to Global Lending despite the evidence provided to it by Plaintiff.

69.     Importantly, Equifax possessed evidence— the signed stipulation, signed order and zero balance letter from Cooling & Winter —that the information was inaccurate as described in Plaintiff's dispute. Notwithstanding, Equifax failed to correct the information.

70.     Put simply, Equifax did not conduct any independent investigation after it received Plaintiff's dispute, and instead chose to simply parrot the information it received from Global Lending despite being in possession of evidence that the information was inaccurate.

71.     Such reporting of the Inaccurate Information despite evidence that it is inaccurate evidences Equifax's failure to establish or follow reasonable procedures to assure the maximum possible accuracy of Plaintiff's credit reports and credit file.

**Trans Union's Response to Plaintiff's Dispute**

72.     As explained above, Trans Union received Plaintiff's detailed dispute regarding the Information on January 13, 2024.

73.     The detailed dispute included a copy of the signed stipulation, signed order and zero balance letter from Cooling & Winter.

74.     Despite receiving Plaintiff's detailed dispute and evidence that she had paid off the account in full by July 14, 2023, Trans Union responded to the dispute (File Number 346892496) on January 26, 2024, by stating the Information was verified as accurate.

75.     Despite receiving Plaintiff's detailed dispute and evidence that she had paid off the account in full in July 2023, Trans Union continued and continues to prepare consumer reports regarding Plaintiff that contain the Inaccurate Information and has communicated those prepared consumer reports to third parties.

76.     As of the filing of this Complaint, no one from Trans Union has attempted to contact Plaintiff to further investigate the dispute.

77.     Trans Union failed to conduct a reasonable investigation.

78.     Trans Union failed to review and consider all relevant information submitted by Plaintiff.

79.     Trans Union failed to conduct an independent investigation, and instead simply deferred to Global Lending despite the evidence provided to it by Plaintiff.

80.     Importantly, Trans Union possessed evidence— the signed stipulation, signed order and zero balance letter from Cooling & Winter —that the information was inaccurate as described in Plaintiff's dispute. Notwithstanding, Trans Union failed to correct the information.

81.     Put simply, Trans Union did not conduct any independent investigation after it received Plaintiff's dispute, and instead chose to simply parrot the information it received from Global Lending despite being in possession of evidence that the information was inaccurate.

82.     Such reporting of the Inaccurate Information despite evidence that it is inaccurate evidences Trans Union's failure to establish or follow reasonable procedures to assure the maximum possible accuracy of Plaintiff's credit reports and credit file.

### Experian's Response to Plaintiff's Dispute

83.     As explained above, Experian received Plaintiff's detailed dispute regarding the Inaccurate Information on January 16, 2024.

84.     The detailed dispute included a copy of the signed stipulation, signed order and zero balance letter from Cooling & Winter.

85.     Despite receiving Plaintiff's detailed dispute and evidence that she had paid off the account in full, by July 14, 2023, Experian did not correct the Inaccurate Information.

86.     On or about January 25, 2024, Experian sent Plaintiff a dispute update stating "When we contact the furnisher or vendor, we ask that they verify all of the information regarding the item you disputed and report back within 30 days of the date that we received your request".

87.     As of the filing of this Complaint, Experian has not provided any relevant response to Plaintiff's dispute.

88.     Despite receiving Plaintiff's detailed dispute and evidence that she had paid off the account in full by July 14, 2023, Experian continued and continues to prepare consumer reports regarding Plaintiff that contain the Inaccurate Information and has communicated those prepared consumer reports to third parties.

89.     Continuing to report the account as having a balance is of significance. By continuing to report that account in that fashion, lenders believe the consumer is still liable for the balance and would consider the balance when determining Plaintiff's debt to income ratio, which is a factor used by creditors when deciding whether and how much to lend.

90.     As of the filing of this Complaint, no one from Experian has attempted to contact Plaintiff to further investigate the dispute.

91.     Experian failed to conduct a reasonable investigation.

92.     Experian failed to review and consider all relevant information submitted by Plaintiff.

93.     Experian failed to conduct an independent investigation, and instead chose to simply ignore Plaintiff's dispute.

94.     Importantly, Experian possessed evidence— the signed stipulation, signed order and zero balance letter from Cooling & Winter —that the information was inaccurate as described in Plaintiff's dispute. Notwithstanding, Experian failed to correct the information.

95.     Put simply, Experian did not conduct any independent investigation after it received Plaintiff's dispute, and instead chose to simply ignore the dispute despite being in possession of evidence that the information was inaccurate.

96.     Upon information and belief, on dates better known to Experian, Experian prepared and communicated other consumer reports with the Inaccurate Information to other third parties after it ignored Plaintiff's dispute.

97.     Such reporting of the Inaccurate Information despite evidence that it is inaccurate evidences Experian's failure to establish or follow reasonable procedures to assure the maximum possible accuracy of Plaintiff's credit reports and credit file.

## COUNT I – GLOBAL LENDING
## UNLAWFUL DEBT COLLECTION
## IN VIOLATION OF THE FCCPA, FLA. STAT. § 559.72

98.     Plaintiff incorporates Paragraphs 1 through 97 above as if fully set forth herein.

99.     Global Lending disclosed information affecting Plaintiff's reputation to the CRAs, with knowledge or reason to know that the information is false when it furnished, validated, and continued to furnish the Inaccurate Information to the CRAs after Plaintiff paid off the Debt in July 2023 in violation of Fla. Stat. § 559.72(5).

100.    Global Lending willfully communicated with Plaintiff with such frequency as can reasonably be expected to harass Plaintiff, or willfully engaged in other conduct which can reasonably be expected to abuse or harass the Plaintiff when it continued demanding payment from Plaintiff via mail after Plaintiff paid off the debt in July 2023 in violation of Fla. Stat. § 559.72(7).

101.    Global Lending claimed, attempted, or threatened to enforce a debt when it knew the debt was not legitimate when it continued demanding payment from Plaintiff via mail after Plaintiff paid off the debt in July 2023 in violation of Fla. Stat. § 559.72(9).

102.    As a direct and proximate result of Global Lending's actions in violation of the FCCPA, Plaintiff has suffered statutory and actual damages, including but not limited to, loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

**WHEREFORE**, Plaintiff requests that the Court enter judgment in favor of Plaintiff and against Defendant, Global Lending for:

     a.  Damages;

     b.  Attorney's fees, litigation expenses and costs of suit; and

c.   Such other or further relief as the Court deems proper.

## COUNT II - EXPERIAN
## FAILURE TO ENSURE MAXIMUM POSSIBLE ACCURACY
## IN VIOLATION OF THE FCRA, 15 U.S.C. § 1681e(b)

103.   Plaintiff incorporates Paragraphs 1 through 97 above as if fully set forth herein.

104.   On at least one occasion within the past two years, by example only and without limitation, Experian violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files published and maintained concerning Plaintiff.

105.   Experian failed to establish or follow reasonable procedures to assure maximum possible accuracy of Plaintiff's credit reports and credit files when reinvestigating Plaintiff's disputes of the Information contained in Plaintiff's Experian credit report.

106.   Experian's procedures were per se deficient by reason of these failures in ensuring maximum possible accuracy of Plaintiff's credit reports and credit files.

107.   As a direct and proximate result of Experian's violations of 15 U.S.C. § 1681e(b), the Plaintiff suffered actual and statutory damages, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

108.   Experian's actions in violation of 15 U.S.C. § 1681e(b) were willful, rendering it liable for actual or statutory damages as well as punitive damages as the

Court may allow and attorney's fees in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, Experian's actions constitute negligent noncompliance with the FCRA rendering it liable for actual damages as well as attorney's fees in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681o.

**WHEREFORE**, Plaintiff requests that the Court enter judgment in favor of Plaintiff and against Defendant, Experian for:

a.  Actual damages;

b.  Statutory damages;

c.  Punitive damages;

d.  Attorney's fees, litigation expenses and costs of suit; and

e.  Such other or further relief as the Court deems proper.

**COUNT III – EXPERIAN**
**FAILURE TO CONDUCT REASONBALE RE-INVESTIGATION**
**IN VIOLATION OF THE FCRA, 15 U.S.C. § 1681i(a)**

109.   Plaintiff incorporates Paragraphs 1 through 97 above as if fully set forth herein.

110.   On at least one occasion within the past two years, by example only and without limitation, Experian violated 15 U.S.C. § 1681i(a)(1)(A) by failing to conduct a reasonable reinvestigation with respect to the disputed Information.

111.   On at least one occasion within the past two years, by example only and without limitation, Experian violated 15 U.S.C. § 1681i(a)(4) by failing to review

and consider all relevant information submitted by the Plaintiff with respect to the disputed Information.

112.   On at least one occasion within the past two years, by example only and without limitation, Experian violated 15 U.S.C. § 1681i(a)(5) by failing to delete the Inaccurate Information.

113.   As a result of Experian's violations of 15 U.S.C. § 1681i(a), Plaintiff suffered actual damages, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

114.   Experian's actions in violation of 15 U.S.C. § 1681i(a) were willful, rendering it liable for actual or statutory damages as well as punitive damages as the Court may allow and attorney's fees in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, Experian's actions constitute negligent noncompliance with the FCRA rendering it liable for actual damages as well as attorney's fees in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681o.

**WHEREFORE**, Plaintiff requests that the Court enter judgment in favor of Plaintiff and against Defendant, Experian for:

  a.  Actual damages;

  b.  Statutory damages;

  c.  Punitive damages;

  d.  Attorney's fees, litigation expenses and costs of suit; and

  e.  Such other or further relief as the Court deems proper.

## <u>COUNT IV – TRANS UNION</u>
## FAILURE TO ENSURE MAXIMUM POSSIBLE ACCURACY
## IN VIOLATION OF THE FCRA, 15 U.S.C. § 1681e(b)

115.    Plaintiff incorporates Paragraphs 1 through 97 above as if fully set forth herein.

116.    On at least one occasion within the past two years, by example only and without limitation, Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files published and maintained concerning Plaintiff.

117.    Trans Union failed to establish or follow reasonable procedures to assure maximum possible accuracy of Plaintiff's credit reports and credit files when reinvestigating Plaintiff's disputes of the Information contained in Plaintiff's Trans Union credit report.

118.    Trans Union's procedures were per se deficient by reason of these failures in ensuring maximum possible accuracy of Plaintiff's credit reports and credit files.

119.    As a direct and proximate result of Trans Union's violations of 15 U.S.C. § 1681e(b), Plaintiff suffered actual and statutory damages, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

120.    Trans Union's actions in violation of 15 U.S.C. § 1681e(b) were willful, rendering it liable for actual or statutory damages as well as punitive damages as the

Court may allow and attorney's fees in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, Trans Union's actions constitute negligent noncompliance with the FCRA rendering it liable for actual damages as well as attorney's fees in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681o.

**WHEREFORE**, Plaintiff requests that the Court enter judgment in favor of Plaintiff and against Defendant, Trans Union for:

    a. Actual damages;

    b. Statutory damages;

    c. Punitive damages;

    d. Attorney's fees, litigation expenses and costs of suit; and

    e. Such other or further relief as the Court deems proper.

## <u>COUNT V – TRANS UNION</u>
### FAILURE TO CONDUCT REASONBALE RE-INVESTIGATION IN VIOLATION OF THE FCRA, 15 U.S.C. § 1681i(a)

121. Plaintiff incorporates Paragraphs 1 through 97 above as if fully set forth herein.

122. On at least one occasion within the past two years, by example only and without limitation, Trans Union violated 15 U.S.C. § 1681i(a)(1)(A) by failing to conduct a reasonable reinvestigation with respect to the disputed Information.

123. On at least one occasion within the past two years, by example only and without limitation, Trans Union violated 15 U.S.C. § 1681i(a)(4) by failing to

review and consider all relevant information submitted by the Plaintiff with respect to the disputed Information.

124.   On at least one occasion within the past two years, by example only and without limitation, Trans Union violated 15 U.S.C. § 1681i(a)(5) by failing to delete the Inaccurate Information.

125.   As a result of Trans Union's violations of 15 U.S.C. § 1681i(a), Plaintiff suffered actual damages, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

126.   Trans Union's actions in violation of 15 U.S.C. § 1681i(a) were willful, rendering it liable for actual or statutory damages as well as punitive damages as the Court may allow and attorney's fees in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, Trans Union's actions constitute negligent noncompliance with the FCRA rendering it liable for actual damages as well as attorney's fees in an amount to be determined by the Court pursuant to 15 U.S.C.  § 1681o.

**WHEREFORE**, Plaintiff requests that the Court enter judgment in favor of Plaintiff and against Defendant, Trans Union for:

        a.  Actual damages;

        b.  Statutory damages;

        c.  Punitive damages;

        d.  Attorney's fees, litigation expenses and costs of suit; and

        e.  Such other or further relief as the Court deems proper.

## COUNT VI – EQUIFAX
## FAILURE TO ENSURE MAXIMUM POSSIBLE ACCURACY
## IN VIOLATION OF THE FCRA, 15 U.S.C. § 1681e(b)

127.    Plaintiff incorporates Paragraphs 1 through 97 above as if fully set forth herein.

128.    On at least one occasion within the past two years, by example only and without limitation, Equifax violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files published and maintained concerning Plaintiff.

129.    Equifax failed to establish or follow reasonable procedures to assure maximum possible accuracy of Plaintiff's credit reports and credit files when reinvestigating Plaintiff's disputes of the Information contained in Plaintiff's Equifax credit report.

130.    Equifax's procedures were per se deficient by reason of these failures in ensuring maximum possible accuracy of Plaintiff's credit reports and credit files.

131.    As a direct and proximate result of Equifax's violations of 15 U.S.C. § 1681e(b), Plaintiff suffered actual and statutory damages, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

132.    Equifax's actions in violation of 15 U.S.C. § 1681e(b) were willful, rendering it liable for actual or statutory damages as well as punitive damages as the Court may allow and attorney's fees in an amount to be determined by the Court

pursuant to 15 U.S.C. § 1681n. Alternatively, Equifax's actions constitute negligent noncompliance with the FCRA rendering it liable for actual damages as well as attorney's fees in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681o.

**WHEREFORE**, Plaintiff requests that the Court enter judgment in favor of Plaintiff and against Defendant, Equifax for:

    f.   Actual damages;

    g.   Statutory damages;

    h.   Punitive damages;

    i.   Attorney's fees, litigation expenses and costs of suit; and

    j.   Such other or further relief as the Court deems proper.

## COUNT VII – EQUIFAX
### FAILURE TO CONDUCT REASONBALE RE-INVESTIGATION IN VIOLATION OF THE FCRA, 15 U.S.C. § 1681i(a)

133.   Plaintiff incorporates Paragraphs 1 through 97 above as if fully set forth herein.

134.   On at least one occasion within the past two years, by example only and without limitation, Equifax violated 15 U.S.C. § 1681i(a)(1)(A) by failing to conduct a reasonable reinvestigation with respect to the disputed Information.

135.   On at least one occasion within the past two years, by example only and without limitation, Equifax violated 15 U.S.C. § 1681i(a)(4) by failing to review and consider all relevant information submitted by the Plaintiff with respect to the disputed Information.

136.   On at least one occasion within the past two years, by example only and without limitation, Equifax violated 15 U.S.C. § 1681i(a)(5) by failing to delete the Inaccurate Information.

137.   As a result of Equifax's violations of 15 U.S.C. § 1681i(a), Plaintiff suffered actual damages, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

138.   Equifax's actions in violation of 15 U.S.C. § 1681i(a) were willful, rendering it liable for actual or statutory damages as well as punitive damages as the Court may allow and attorney's fees in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, Equifax's actions constitute negligent noncompliance with the FCRA rendering it liable for actual damages as well as attorney's fees in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681o.

**WHEREFORE**, Plaintiff requests that the Court enter judgment in favor of Plaintiff and against Defendant, Equifax for:

      a.   Actual damages;

      b.   Statutory damages;

      c.   Punitive damages;

      d.   Attorney's fees, litigation expenses and costs of suit; and

      e.   Such other or further relief as the Court deems proper.

<u>**COUNT VIII– GLOBAL LENDING**</u>
**FAILURE TO CONDUCT REASONABLE INVESTIGATION**
**IN VIOLATION OF THE FCRA, 15 U.S.C. § 1681s-2(b)**

139.    Plaintiff incorporates Paragraphs 1 through 97 above as if fully set forth herein.

140.    On at least one occasion within the past two years, by example only and without limitation, Global Lending violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to conduct a reasonable investigation with respect to the disputed Information.

141.    On one or more occasions within the past two years, by example only and without limitation, Global Lending violated 15 U.S.C. § 1681s-2(b)(1)(B) by failing to review all relevant information provided by the consumer reporting agencies.

142.    On one or more occasions within the past two years, by example only and without limitation, Global Lending violated 15 U.S.C. § 1681s-2(b)(1)(E) by failing to delete the Inaccurate Information.

143.    The law in this District, the Eleventh Circuit, and even nationally has long ago been articulated to require a detailed and searching investigation by a furnisher when it receives a consumer's FCRA dispute through a CRA.

144.    Upon information and belief, Global Lending was aware of the FCRA decisions by the Eleventh Circuit setting out furnishers' obligations to reasonably investigate disputes when it received notice of Plaintiff's disputes.

145.   When Global Lending received notice of Plaintiff's dispute from the CRAs, Global Lending could and should have reviewed its own systems and previous communications with the Plaintiff as part of its investigation.

146.   If Global Lending had reviewed its own systems and previous communications with the Plaintiff, it would have discovered that the Information it was reporting was inaccurate.

147.   Global Lending's investigation was per se deficient by reason of these failures in Global Lending's investigation of Plaintiff's dispute.

148.   As a direct and proximate result of Global Lending's violations of 15 U.S.C. § 1681s-2(b), Plaintiff suffered actual damages, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

149.   Global Lending's actions in violation of 15 U.S.C. § 1681s-2(b) were willful, rendering it liable for actual or statutory damages as well as punitive damages as the Court may allow and attorney's fees in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, Global Lending's actions constitute negligent noncompliance with the FCRA rendering it liable for actual damages as well as attorney's fees in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681o.

**WHEREFORE**, Plaintiff requests that the Court enter judgment in favor of Plaintiff and against Defendant, Global Lending for:

a.  Actual damages;

b.  Statutory damages;

c.  Punitive damages;

d.  Attorney's fees, litigation expenses and costs of suit; and

e.  Such other or further relief as the Court deems proper.

## <u>JURY DEMAND</u>

Plaintiff demands trial by jury.

By:  <u>/s/Kimberly H. Wochholz</u>
Kimberly H. Wochholz – Lead Counsel
Fla. Bar No. 0092159
The Consumer Rights Law Group, PLLC
P.O. Box 5326
Sun City Center, FL 33571
Phone: 813-413-5710
Fax: 866-535-7199
Kim@ConsumerRightsLawGroup.com
***Counsel for Plaintiff***